**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

EASTERN _____ District of NEW YORK
                              (State)

Case number (*if known*): _____ Chapter 11



RECEIVED

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

*If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, Instructions for Bankruptcy Forms for Non-Individuals, is available.*

1. **Debtor's name**    2303 AVE LLC

2. **All other names debtor used in the last 8 years**
   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**    8 1 – 2 2 4 4 1 4 2

4. **Debtor's address**

   **Principal place of business**

   739 Crown Street
   Number      Street

   Brooklyn        New York 11213
   City            State    ZIP Code

   Kings
   County

   **Mailing address, if different from principal place of business**

   Number      Street

   P.O. Box

   City            State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   2303 Avenue D
   Number      Street

   Brookjlyn        NY    11226
   City            State    ZIP Code

5. **Debtor's website (URL)**

| Debtor | 2303 Ave LLC | Case number (if known) |
|---|---|---|
| | Name | |

---

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

---

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☑ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☑ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

2  3  6  1

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

  ☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

Debtor    <u>2303 AVE LLC</u>                                        Case number *(if known)*_____
          Name

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

☑ No

☐ Yes.

If more than 2 cases, attach a separate list.

| | | |
|---|---|---|
| District _____ | When _____ MM / DD / YYYY | Case number _____ |
| District _____ | When _____ MM / DD / YYYY | Case number _____ |

**10.  Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes.

Debtor _____    Relationship _____

District _____    When _____
                                            MM / DD / YYYY

Case number, if known _____

**11.  Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.  Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                         Number       Street

_____

_____
City                                    State ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

---

| Debtor | 2303 AVE LLC | Case number *(if known)*_____ |
|---|---|---|
| | Name | |

**13. Debtor's estimation of available funds**

*Check one:*

☐ Funds will be available for distribution to unsecured creditors.

☑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49          ☐ 1,000-5,000          ☐ 25,001-50,000
☐ 50-99          ☐ 5,001-10,000          ☐ 50,001-100,000
☐ 100-199          ☐ 10,001-25,000          ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☐ $0-$50,000          ☑ $1,000,001-$10 million          ☐ $500,000,001-$1 billion
☐ $50,001-$100,000          ☐ $10,000,001-$50 million          ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000          ☐ $50,000,001-$100 million          ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million          ☐ $100,000,001-$500 million          ☐ More than $50 billion

**16. Estimated liabilities**

☐ $0-$50,000          ☑ $1,000,001-$10 million          ☐ $500,000,001-$1 billion
☐ $50,001-$100,000          ☐ $10,000,001-$50 million          ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000          ☐ $50,000,001-$100 million          ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million          ☐ $100,000,001-$500 million          ☐ More than $50 billion

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  05/02/2024
                    MM  / DD / YYYY

✗ _____          Lesmore Willis
   Signature of authorized representative of debtor          Printed name

Title  Vice President

---

Debtor    2303 AVE LLC
_____    Case number (if known)_____
          Name

---

**18. Signature of attorney**    ✖ _____    Date _____
                                    Signature of attorney for debtor           MM  / DD / YYYY

_____
Printed name

_____
Firm name

_____
Number       Street

_____    State _____    ZIP Code _____
City

_____    Email address _____
Contact phone

_____    State _____
Bar number

---

**Fill in this information to identify the case:**

Debtor name __2303 AVE LLC__

United States Bankruptcy Court for the: __EASTERN__ District of __New York__
(State)

Case number (If known): _____

❑ Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | NONE | NONE | NONE | | | | |
| 2 | NONE | NONE | NONE | | | | |
| 3 | NONE | NONE | NONE | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |

Debtor    2303 AVE LLC _____    Case number (if known)_____
          Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

**Fill in this information to identify the case and this filing:**

Debtor Name   2303 AVE LLC

United States Bankruptcy Court for the:   EASTERN   District of   New York
(State)

Case number (If known):   _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. **Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   05/ 2/2024        ✗ _____
MM / DD / YYYY                      Signature of individual signing on behalf of debtor

Lesmore Willis
Printed name

VICE PREESIDENT
Position or relationship to debtor

Fill in this information to identify the case and this filing:

Debtor Name __2303 AVE LLC__

United States Bankruptcy Court for the: __EASTERN__ District of __New York__
(State)

Case number (If known): _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __05/02/2024__    ✗ _____
MM / DD / YYYY              Signature of individual signing on behalf of debtor

Lesmore Willis
Printed name

Vice President
Position or relationship to debtor

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

Chapter 11

☐ _____ X

Case No: _____

IN RE: 2303 AVE LLC

Debtor

☐ _____ X

**CORPORATE DISCLOSURE STATEMENT**
**PURSUANT TO E.D.N.Y LBR 1073-3**

I, Ronald Fraser, under penalty of perjury state as follows:

    1.      I am the Vice President of the Debtor in the above captioned matter.

    2.      There are no corporate entities that own, directly or indirectly, 10% or more of any class of the Debtor's equity interests.

    3.      I declare under penalty of perjury that I have read the foregoing statements and that they are true and accurate to the best of my knowledge, information and belief.

Dated: May 2, 2024

                                  _____
                                    Lesmore Willis
                                    Vice President
                                    2303 AVE LLC (Debtor)

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on April 07, 2016.

*Anthony Giardina*

Anthony Giardina
Executive Deputy Secretary of State

Rev. 06/07

DIVISION OF CORPORATIONS AND STATE RECORDS        ALBANY, NY 12231-0001

ONLINE FILING RECEIPT
=================================================================

ENTITY NAME: 2303 AVE LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)        COUNTY: KING
=================================================================

FILED:04/07/2016 DURATION:********* CASH#:160407010363 FILE#:160407010363
DOS ID:4926784

      FILER:                                        EXIST DATE
      ------                                        ----------
      DOROTHY BLACK
      378 ROCHESTER AVENUE                          04/07/2016
      BROOKLYN, NY 11213

      ADDRESS FOR PROCESS:
      --------------------
      2303 AVE LLC
      378 ROCHESTER AVENUE
      BROOKLYN, NY 11213

      REGISTERED AGENT:
      -----------------
      DOROTHY BLACK
      378 ROCHESTER AVENUE
      BROOKLYN, NY 11213

The limited liability company is required to file a Biennial Statement with the
Department of State every two years pursuant to Limited Liability Company Law
Section 301. Notification that the Biennial Statement is due will only be made via
email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
receive an email notification when the Biennial Statement is due.
=================================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **
SERVICE CODE: 00

FEE:          210.00
            ----------                  PAYMENTS     210.00
FILING:       200.00                                ---------
TAX:            0.00                     CHARGE      210.00
PLAIN COPY:     0.00                     DRAWDOWN      0.00
CERT COPY:     10.00
CERT OF EXIST:  0.00
=================================================================
                                        DOS-1025 (04/2007)

Authentication Number: 1604070377  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at

# ARTICLES OF ORGANIZATION
## OF
## 2303 Ave LLC

Under Section 203 of the Limited Liability Company Law

THE UNDERSIGNED, being a natural person of at least eighteen (18) years of age, and acting as the organizer of the limited liability company hereby being formed under Section 203 of the Limited Liability Company Law of the State of New York certifies that:

**FIRST:**     The name of the limited liability company is:

**2303 Ave LLC**

**SECOND:**     The county, within this state, in which the office of the limited liability company is to be located is KINGS.

**THIRD:**     The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

2303 Ave LLC
378 Rochester Avenue
Brooklyn, NY 11213

**FOURTH:**     The limited liability company designates the following as its registered agent upon whom process against it may be served within the State of New York is:

Dorothy Black
378 Rochester Avenue
Brooklyn, NY 11213

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

Dorothy Black, Organizer  (signature)
_____
Dorothy Black , ORGANIZER
378 Rochester Avenue
Brooklyn, NY 11213

Filed by:
Dorothy Black
378 Rochester Avenue
Brooklyn, NY 11213

FILED WITH THE NYS DEPARTMENT OF STATE ON: 04/07/2016
FILE NUMBER: 160407010363; DOS ID: 4926784

# OPERATING AGREEMENT for 2303 AVE LLC

**DATE:** APRIL 7th, 2016

**PARTIES: DOROTHY BALCK and LESMORE WILLIS**

## RECITAL:

The parties to this agreement Dorothy Black and Lesmore Willis are entering into this agreement for the purpose of forming a limited liability company (the " 2303 AVE LLC.") that is to be managed by one or more managers (the "managers") under the Limited Liability Company Act of the state of *New York*

## AGREEMENTS:

**1.  Formation**

**1.1    Name**. The name of the company is 2303 AVE LLC

**1.2    Articles of Organization**. Articles of organization for the company were filed with the Registered Agent  DOROTHY BLACK and LESMORE WILLIS

**1.3    Duration**. The company will exist until dissolved as provided in this agreement.

**1.4    Principal Office**. The company's principal office will initially be at 378 Rochester Avenue  Brooklyn New York but it may be relocated by the managers at any time.

**1.5    Registered Office and Registered Agent**. The company's initial registered office will be  at 378 Rochester Avenue Brooklyn  NY and the name of its initial registered agent at that address will be Dorothy Black and Lesmore Willis  The company's registered agent and registered office can only be changed by filing a notice of the change with the registration of  Companies in which the articles of organization of the company were filed.

**1.6**

**Purposes and Powers**. The company is formed for the purpose of engaging in any lawful business. The company has the power to do all things necessary, incident, or in furtherance of that business.

**1.7**

**Title to Assets**. Title to all assets of the company will be held in the name of the company. No member has any right to the assets of the company or any ownership interest in those assets except indirectly as a result of the member's ownership of an interest in the company. No member has any right to partition any assets of the company or any right to receive any specific assets on the winding up of the company's business or on any other distribution from the company. Assets of the company may not be commingled with those of a member or any other person.

2.    **Members, Contributions and Interests**

2.1    **Initial Members**. The names and addresses of the initial members of the company, the amounts of their initial capital contributions, and their initial ownership interests are:

| Name and Address | Contribution | Ownership Interest |
|---|---|---|
| DOROTHY BLACK | *Services* | *50%* |
| LESMORE WILLIS 378 Rochester Avenue Brooklyn NY | | *50%* |

2.2    **Initial Capital Contributions**. Dorothy Balck and Lesmore Willis  have made initial capital contributions in the past year as well as contributed services to the company. and are not making any further capital contribution. Rather than maintaining their interests in the profits and losses of the company in exchange for future services to be performed for the company.

2.3    **Additional Members**. Except as otherwise provided in the section of this agreement relating to substitution, additional members of the company may be admitted only with the members' unanimous approval.

2.4    **Additional Contributions**. Except as otherwise provided in the act, no member is required to contribute additional capital to the company without the member's consent. Additional capital contributions may be made only with the managers' unanimous approval. If the managers approve additional capital contributions, they must set a maximum. Members will then have the right, but not the obligation, to contribute pro rata shares of the maximum based on their ownership interests. If any member elects to contribute less than his or her pro rata share, the other members may contribute all or part of the difference on a pro rata basis in accordance with their ownership interests or on any other basis they may agree on.

2.5    **No Interest on Capital Contributions**. No interest will be paid on capital contributions.

2.6    **Capital Accounts**. An individual capital account must be maintained for each member. A member's capital account will be credited with all capital contributions made by the member and with all income and gain (including any income exempt from federal income tax) allocated to the member. A member's capital account will be charged with the amount of all distributions made to the member and with all losses and deductions (including deductions attributable to tax-exempt income) allocated to the member. Members' capital accounts must be maintained in accordance with the federal income tax accounting principles contained in Treas. Reg. §1.704-1(b)(2)(iv).

2.7    **Adjustment of Capital Accounts**. If additional capital is contributed to the company by any existing or new member or if money or property is distributed by the company in liquidation of all or part of the interest of a member, the managers may elect by

unanimous agreement to increase or decrease the capital accounts of all members to reflect a revaluation of the property of the company on its books. If an adjustment is made, it must be based on the fair market value of the property of the company at the time the adjustment is made and must reflect the way in which unrealized income, gain, loss, or deduction inherent in the property would be allocated between the members under the section of this agreement relating allocation of profits and losses. After an adjustment is made, members' distributive shares of depreciation, depletion, amortization, and gain and loss as computed for tax purposes must be determined by taking into account the difference between the book value of the property of the company existing at the time the adjustment was made and the adjusted tax basis of the property under Treas. Reg. §1.704-1(b)(4)(i). In addition, the capital accounts of the members must be adjusted after the adjustment is made to reflect depreciation, depletion, amortization, and gain and loss the as determined for book purposes as required in Treas. Reg. §1.704-1(b)(2)(iv)(g).

**2.8      Outside Activities and Fiduciary Duties**. Members may engage in business and investment activities outside the company, and neither the company nor the other members have any rights to the profits or benefits of such activities. But a member may not compete with the company in the operation of its business prior to the time the company is dissolved. Except as otherwise provided in this section, no member owes any fiduciary duty to the company or the other members solely by reason of being a member of the company.

**2.9      Self Interest of Members**. A member does not violate any duty or obligation to the company merely as a result of engaging in conduct that furthers the interest of the member. A member may lend money or transact other business with the company, and, in this case, the rights and obligations of the member will be the same as those of a person who is not a member, so long as the loan or other transaction has been approved by the managers, or by the members if the member is manager. Unless otherwise provided by applicable law, a member with a financial interest in the outcome of a particular action is nevertheless entitled to vote on such action.

**2.10    Limited Liability.** Except as otherwise provided in the act, the member has no personal liability for any obligation, expense, or liability of the company, including the obligation to indemnify managers.

**3.    Allocation of Profits and Losses**

**3.1      Net Profit or Loss.** The net profit or loss of the company for each fiscal year will be determined according to the accounting principles employed in the preparation of the company's federal income tax information return. The profit or loss, as well as any items thereof that must be separately stated under IRC §703(a), will be allocated to the members in proportion to their ownership interests.

**3.2      Special Allocations of Losses.** Notwithstanding the provisions of the section of this agreement relating to allocation of net profits and net losses:

**3.2.1** No allocation of net losses of the company may be made to any member to the extent the allocation would cause the member to have an adjusted capital account deficit at the end of the fiscal year in which the allocation would otherwise be made. Any loss that cannot be allocated to a member under this section must be reallocated to the other members who do not have adjusted capital account deficits at the end of the fiscal year. The loss is to be reallocated to the other members in proportion to their ownership interests. For purposes of this section relating to regulatory allocations, an "adjusted capital account deficit" means a negative balance in a member's capital account after the capital account is increased by the amounts the member is deemed to be obligated to restore under Treas. Reg. §§1.704-2(g)(1) and 1.704-2(i)(5) (that is, the member's share of partnership minimum gain and the member's share of partner nonrecourse debt) and the capital account is reduced by the amounts described in Treas. Reg. §1.704-1(b)(2)(ii)(d)(4), (5), and (6). Any net losses that cannot be allocated to a member under the preceding sentence will be reallocated to the other members in order to allocate the maximum possible amount of net losses to all members. This allocation of losses will be made in proportion to the other members' ownership interests. If any net loss is reallocated to another member under this subsection, 100% of the net profits of the company for all subsequent fiscal years will be specially allocated to such other member until the aggregate net profits specially allocated to such member equal the aggregate net losses that have been reallocated to such member. If net profits are specially allocated to more than one member under this section, the net profits for any given fiscal year will be divided between such members in proportion to the amount of the aggregate net losses that have been reallocated to each such member and have not been offset by special net profit allocations as of the beginning of the fiscal year.

**3.2.2** If any member receives any adjustments, allocations, or distributions described in Treas. Reg. §§1.704-1(b)(2)(ii)(d)(4), (5), or (6) causing the member to have an adjusted capital account deficit at the end of the fiscal year in which the adjustment, allocation, or distribution is made, the member must be specially allocated items of company income and gain (consisting of a pro rata share of each item of income or gain) in an amount and manner sufficient to eliminate the adjusted capital account deficit as quickly as possible. This subsection is intended to comply with the qualified income offset provisions of Treas. Reg. §1.704-1(b)(2)(ii)(d) and is to be interpreted in a manner consistent with those provisions.

**3.2.3** The special allocations required under the preceding subsections are intended to comply with requirements of the Treasury Regulations. The members desire that, to the extent possible, all such special allocations be offset either with other additional special allocations or with special allocations of other items of company income, gain, loss, or deduction. If any allocation is made under the preceding subsections, offsetting allocations of company income, gain, loss, or deduction must be made in whatever manner the members reasonably determine appropriate so that, after such offsetting allocations are made, the capital account

of each member is, to the extent possible, equal to the capital account the member would have had if the allocation under the preceding subsections had not been made. These offsetting allocations take priority over the allocations that would otherwise made under the section of this agreement relating to allocation of net profits and net losses.

**3.3     Allocations Solely for Tax Purposes.** In accordance with IRC §704(c), income, gain, loss, and deduction with respect to any property contributed to the capital of the company must be allocated among the members to take into account any variation between the adjusted basis of the property for federal income tax purposed in the hands of the company and the agreed value of the property as set forth in this agreement, or in any document entered into at the time additional property or other capital is contributed to the company. Any elections or other decisions relating to the allocations to be made under this section will be made by the managers. The allocations to be made under this section are solely for income tax purposes and will not affect any member's capital account, allocable share of the net profits and net losses, or right to distributions.

**3.4     Prorates.** If a member has been a member of the company during only part of a fiscal year, or if a member's ownership interest changes during a fiscal year, the net profit or net loss for the year will be allocated to the member based on the period of time during which the member was a member or held a particular ownership interest. Net profit or loss for the fiscal year may be allocated ratably between the persons who were members on a daily basis using the company's usual accounting methods. Except as otherwise provided in IRC § 706(d)(3), the company's fiscal year may, in the alternative, be divided into two or more segments, and the net profits or losses for each segment allocated among the persons who were members, or who held particular ownership interests, during the segment. Decisions about the method of prorating profit or loss will be made by the managers.

**4.     Distributions**

**4.1     Annual Distributions.** To enable the members to pay taxes on income of the company, the company must distribute cash during each fiscal year in an amount equal to the product of: (a) the amount of the taxable income of the company for the year and (b) the highest aggregate rate of federal, state, and local income and self-employment tax imposed on any member's share of the income. Distributions must be paid quarterly at times that coincide to the extent possible with the members' payment of estimated taxes, and the amount of each distribution is to be based on the anticipated taxable income of the company for the fiscal year of the distribution and the anticipated tax rates of members, as determined at the time the distribution is made.

**4.2     Additional Distributions.** Additional distributions of cash or property may be made by the company to the members, at such times and in such amounts as the members determine.

**4.3**    **Allocation and Limitation.** All annual distributions and additional distributions must be made to members in proportion to their ownership interests. No distribution, including an annual distribution, may be made to the extent it would violate the act's restrictions on distributions.

5.    **Administration of Company Business**

**5.1**    **Managers.** As provided in its articles of organization, the company will be managed by managers. The number of managers serving at any given time will be the number elected by the members, but the number may not be less than one or more than three. Managers may be entities as well as individuals and need not be members. One of the mangers shall be nominated as the Chief Executive Manager. The Chief Executive Manager's choice will serve as the tie-breaker vote during situations where the managers or members have reached a decision-making deadlock or impasse.

**5.2**    **Initial Managers.** The company will initially have two managers: Ronald Fraser and Andy Alege shall be the initial Chief Executive Manager

**5.3**    **Election and Term of Managers.** Managers will be elected at meetings of the members called for the purpose of electing managers. The notice of any meeting of members at which managers are elected must state that electing managers is a purpose of the meeting. Each manager, including each of the initial managers named in this agreement, will serve for a term ending at the next meeting of members called for the purpose of electing managers, or until the manager's earlier death, resignation, or removal. A member may only be elected by at least 75% vote of the voting members.

**5.4**    **Resignation and Removal of Managers.** A manager may resign at any time by delivering a written resignation to the members and the other managers. The resignation will be effective when received by all members and managers unless the resignation specifies a later effective date. The members may remove any manager at any time, but only for cause and by at least 75% vote of all voting members. But a manager may be removed by the members only at a meeting of the members called for the purpose of removing the manager, and the notice of the meeting must state that removing a manager is a purpose of the meeting. The resignation or removal of a manager who is also a member will not constitute a withdrawal or expulsion of the manager as a member of the company or otherwise affect the manager's rights as a member. If a manager resigns or is removed, a meeting of members to elect a successor must be called promptly and held as soon as reasonably possible.

**5.5**    **Authority of Managers.** The managers are vested with the exclusive authority to manage the company's business and affairs, and except as otherwise provided in this agreement, the members have no right to participate in the management of the company's business and affairs unless they are also managers. All managers have the right to participate in the control and conduct of the company's business. Subject to the limitations imposed by this agreement or by action of the managers, each manager is an

agent of the company and has authority to bind the company in the ordinary course of its business. For example, a manager may:

    **5.5.1**    Expend the company's funds in the conduct of its business;

    **5.5.2**    Sign and deliver all agreements and documents that are necessary or desirable to carry out the company's business, including documents conveying, leasing, or granting a security interest in any of the company's assets, without additional signatures being required;

    **5.5.3**    Borrow money for use in the company's business and sign and deliver promissory notes or other negotiable or nonnegotiable evidences of the company's indebtedness along with mortgages, trust deeds, security agreements, pledge agreements, or other documents securing the indebtedness with assets of the company; and

    **5.5.4**    Engage such persons as may be advisable to operate the company's business.

**5.6**    **Actions by Managers**. If there is more than one manager serving, all decisions requiring action of the managers or relating to the business or affairs of the company will be decided by the affirmative vote or consent of a majority of the managers. In case of a need for a tiebreaker, the Chief Executive Manager's vote shall serve as tiebreaker. Managers may act with or without a meeting, and any manager may participate in any meeting by written proxy or by any means of communication reasonable under the circumstances.

**5.7**    **Approval of Members**. No manager has authority to do any of the following without the prior approval of a majority of the votes of the voting members:

    **5.7.1**    To sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the company;

    **5.7.2**    To merge the company with any other entity;

    **5.7.3**    To amend the articles of organization of the company or this agreement;

    **5.7.4**    To incur indebtedness by the company other than in the ordinary course of business;

    **5.7.5**    To authorize a transaction involving an actual or potential conflict of interest between a member and the company;

    **5.7.6**    To change the nature of the business of the company; or

    **5.7.7**    To commence a voluntary bankruptcy case for the company.

The managers may refer other matters to the members for approval but are not required to do so.

**5.8**     **Compensation and Reimbursement of Managers**. The managers will be paid such salaries and other compensation as may be fixed from time to time by the majority votes of the voting members. Managers are also entitled to reimbursement from the company for reasonable expenses incurred on behalf of the company, including expenses incurred in the formation, dissolution, and liquidation of the company.

**5.9**     **Outside Activities of Managers**. The managers must devote so much time and attention to the business of the company as they deem appropriate, consistent with their fiduciary duties. Managers are not expected to devote their full time to the business of the company, and except as otherwise provided in the section of this agreement relating to fiduciary duties of managers, they may engage in business and investment activities outside the company. Neither the company nor any member has any rights to the profits or benefits of such activities.

**5.10**    **Fiduciary Duties of Managers**. Each manager owes the fiduciary duties of care and loyalty to the company and the members and must discharge these duties and exercise the manager's rights in the company consistently with the obligation of good faith and fair dealing. Managers must discharge their fiduciary duties of care and loyalty to the company and to the members in accordance with the standards set forth in the section of this agreement relating to outside activities of managers as well as the following standards:

      **5.10.1**   In conducting or winding up the company's business, a manager must act in a manner that the manager reasonably believes to be in the best interest of the company and must use the care that a person in like position would reasonably believe appropriate under the circumstances;

      **5.10.2**   A manager must account to the company and hold as trustee for the company any profit or benefit derived by the manager in the conduct or winding up of the company's business or derived from use by the manager of the company's property, including the appropriation of a company opportunity;

      **5.10.3**   Except as otherwise provided in the section of this agreement relating to self interest of managers, a manager must refrain from dealing with the company in the conduct or winding up of its business either personally or on behalf of a party having an adverse interest to the company; and

      **5.10.4**   A manager may not compete with the company in the conduct of its business prior to the time the company is dissolved.

**5.11**    **Self Interest of Managers**. A manager does not violate any duty or obligation to the company merely as a result of engaging in conduct that furthers the interest of the manager. A manager may lend money or transact other business with the company, and,

in this case, the rights and obligations of the manager will be the same as those of a person who is not a manager, so long as the loan or other transaction has been approved or ratified by the members. Unless otherwise provided by applicable law, a manager with a financial interest in the outcome of a particular action is nevertheless entitled to vote on the action.

5.12    **Indemnification**. The company must indemnify each of the managers against all liabilities, losses, and costs (including attorneys' fees) incurred or suffered by the manager in connection with the company or in connection with the manager's participation in any other entity, association, or enterprise at the request of the company. The company may, by action of the managers, provide indemnification to employees and agents who are not managers. The company has no obligation to indemnify a manager for any liability arising out of: (a) a breach of the manager=s fiduciary duties to the company or the members; (b) an act or omission not in good faith that involves intentional misconduct or a knowing violation of law; or (c) an unlawful distribution under the act. The indemnification required in this section is not exclusive of that required by any statute, agreement, resolution of members, contract, or otherwise.

# 6.    Member Meetings

6.1    **Meetings**. A meeting of members may be called by the managers or by members holding at least 10% of the ownership interests. If a meeting is called by members, the members give notice demanding a meeting to the managers, and the notice must state the purposes for which the meeting is to be held. Meetings of the members will be held at the principal office of the company.

6.2    **Notice of Meetings**. Notice of the date, time, and place of all meetings of members must be given to each member in writing not earlier than 60 days or less than 10 days before the meeting date. The notice must include a description of the purpose or purposes for which the meeting is called. The notice must be mailed to each member at the address for giving notice the member under the section relating to notice.

6.3    **Record Date**. The members who are entitled to notice of a meeting of members and to vote at the meeting, and their respective ownership interests, must be determined as of the record date for the meeting. The record date may be selected by the managers and may not be more than 70 days nor less than 10 days before the meeting. If the managers do not select a record date, it will be the date on which the initial notice of the meeting was mailed to the members.

6.4    **Quorum and Voting.** A member may be represented at a meeting of members, and may vote, in person or by written proxy. The presence at a meeting of members, in person or by proxy, of members holding more than 70% of the ownership interests constitutes a quorum. Members are entitled to the following number of the five total member votes, if any:  N/A1 vote; N/A, 2 votes; N/A, 2 votes; N/A, Zero votes. N/Ashall not be considered a voting member for any purpose under this agreement and all operations of the company.  Except as otherwise provided in the company's articles of organization,

this agreement, or the act, a matter submitted to a vote at a meeting of the members will be approved if a majority of the votes of the voting members on the matter are voted in its favor.

**7.    Action by Managers or Members**

**7.1    Meetings Without Notice.** Notwithstanding any other provision of this agreement, if all of the managers or all of the members hold a meeting at any time or place and no manager or member objects to the lack of notice, the meeting will be valid even if there was no notice or the notice given was insufficient, and any action taken at the meeting will be the action of the managers or members, as the case may be.

**7.2    Actions Without Meeting.** Any action required or permitted to be taken by the managers or by the members at a meeting may be taken without a meeting if a written consent setting forth the action taken is signed by all of the managers or voting members, as the case may be. Written consents of the managers and members must be retained as part of the company's records of meetings.

**7.3    Meetings by Telephone.** Meetings of the managers or members may be held by conference telephone or by any other means of communication by which all participants can hear each other simultaneously during the meeting. If a manager or member participates in a meeting by conference telephone or by other means authorized by this section, the manager or member will be considered to be present at the meeting in person.

**8.    Accounting and Records**

**8.1    Books and Records.** The managers must keep such books and records relating to the operation of the company as are appropriate and adequate for the company's business and carrying out this agreement. At a minimum, the following must be maintained at the principal office of the company: (a) financial statements for the three most recent fiscal years; (b) federal, state, and local income tax returns for the three most recent fiscal years; (c) a register showing the names and current addresses of the members; (d) a copy of the company's articles of organization and any amendments; (e) this agreement and any amendments; (f) minutes of all meetings of managers or members; and (g) all consents to action by managers or members. Each member will have access to all the company's books and records at all times.

**8.2    Banking.** All funds of the company must be deposited in accounts in the company's name at Chase Bank or such banks or savings and loan associations as the members determine. Funds may be withdrawn from the accounts on the signature of a person or persons designated by the members.

**8.3    Fiscal Year.** The fiscal year of the company will be the calendar year.

**8.4    Accounting Reports.** Within 90 days after the close of each fiscal year, the company must deliver to each member an unaudited report of the activities of the company for the

fiscal year, including a copy of a balance sheet of the company as of the end of the year and a profit and loss statement for the year.

**8.5    Tax Returns**. The company must prepare and file on a timely basis all required federal, state, and local income tax and other tax returns. Within 90 days after the end of each fiscal year, the company must deliver a Schedule K-1 to each member showing the amounts of any income, gain, loss, deductions, or credits allocated to the member for the fiscal year.

**8.6    Tax Matters Partner**. Anytime the company has more than 10 members, any member is an entity other than an estate or a C corporation, or any member is a nonresident alien individual, the members must designate one of the members as the tax matters partner of the company in accordance with IRC §6231(a)(7) and keep this designation in effect at all times. In making this designation, preference must be given to members who are also managers.

## 9.    Dissociation of Members

**9.1    Withdrawal.** No member may withdraw from the company.

**9.2    Events of Dissociation**. If a member who is an individual dies, a member who is an individual and is serving as a manager becomes incapacitated, a member that is an entity is dissolved or terminated, or any member becomes bankrupt, the member will be deemed to have dissociated from the company effective on the later of the date of the event or the first day the company has knowledge of the event (the "dissociation date").

   **9.2.1    A member-manager will be considered to be incapacitated if a guardian of the member's person or a conservator of the member's estate is appointed. A member-manager will also be considered to be incapacitated if the member has been unable to perform the essential functions of a manager of the company, with or without reasonable accommodation, for a consecutive period of 180 days, or it has been determined with reasonable medical certainty that the member will be unable to perform those functions for a consecutive period of 180 days.**

   **9.2.2    A member will be considered bankrupt if: (a) the member makes an assignment for the benefit of creditors; (b) the member files a voluntary petition in bankruptcy; (c) the member is adjudicated as being bankrupt or insolvent; (d) the member files a petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, or dissolution for the member, or similar relief under any statute, law, or regulation; (e) the member files an answer or other pleading admitting or failing to contest the material allegations in any proceeding of the foregoing nature filed against the member, or the proceeding is not dismissed within 120 days after it is commenced; or (f) the member seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the member, or of all or any substantial part of the member's property, or the appointment of such a trustee, receiver, or liquidator without the member's**

consent is not vacated or stayed within 120 days after the appointment or after the expiration of the stay.

**9.3**    **Effect of Dissociation**. For purposes of this agreement the "dissociation date" with respect to a dissociating member is the effective date of the member's withdrawal or the date of the member's expulsion. If another event causes the dissociation, the dissociation date is the later of the date of the event, or the first day the company has knowledge of the event. Within 60 days after the dissociation date, the company may elect to purchase a dissociating member's ownership interest by giving notice of the election to the dissociating member and all other members. If the election is not made by the company during this period of time, one or more of the other members may elect to purchase the dissociating member's ownership interest by giving written notice to the dissociating member, the company, and the other members. This notice must be given within 15 days after the 60-day period for the company to purchase the interest expires. If more than one member elects to make the purchase, the electing members have the right to purchase the interest pro rata in accordance with their ownership interests. No election to purchase a dissociating member's ownership interest will be effective unless the election is made by the company or the other members to purchase the dissociating member's entire interest. Dissociating members are not required to sell part of their ownership interests. If neither the company nor the other members elects to purchase a dissociating member's ownership interest within the allowable time limits, the company will be dissolved, and its business must be wound up.

**9.4**    **Purchase Price**. The purchase price for a dissociating member's interest in the company may be determined by agreement between the dissociating member and the purchaser, whether the purchaser is the company or other members. If an agreement is not reached within 30 days following the election to purchase the interest, it must be valued by a third-party appraiser selected by the purchaser who is reasonably acceptable to the dissociating member, and the purchase price will be the value determined by that appraisal. In appraising the interest, the appraiser must determine the fair market value of the dissociating member's interest in the company on the dissociation date, considering the greater of the liquidation value of the company or its value as a going concern. The appraiser must also consider appropriate minority interest, lack of marketability, and other discounts. If the appraisal is not completed within 180 days following the election to purchase a dissociating member's interest, the dissociating member may apply to a court of competent jurisdiction for the appointment of another appraiser, in which case the court-appointed appraiser must appraise the interest in accordance with the standards set forth in this section, and the purchase price will be the value determined by that appraisal. One-half of the costs of all appraisals must be paid by the dissociating member, and the purchaser must pay the other half.

**9.5**    **Payment for Member's Interest**. Whether a dissociating member's interest in the company is purchased by the company or the other members, the purchase price for the interest will be paid as provided in this section.

**9.5.1**    The purchase price will be payable in accordance with the terms of a promissory note of the purchaser (or promissory notes of the purchasers if there is more than

one) providing for the payment of the principal amount in 60 equal monthly installments, including interest on the unpaid balance at the prime rate of interest as quoted in the *Wall Street Journal* for the last business day before the closing, with the first installment to be due one month after the date of closing and an additional installment to be due on the same day of each succeeding month until paid in full. The note will provide that if any installment is not paid when due, the holder may declare the entire remaining balance, together with all accrued interest, immediately due and payable. Partial or complete prepayment of the remaining balance due under the note will be permitted at any time without penalty, but no partial prepayment will affect the amount or regularity of payments coming due thereafter.

9.5.2     Payment of the promissory note will be secured by one or more security agreements in a form reasonably acceptable to the lawyer for the dissociating member. The collateral will be a member's interest in the company comparable to the interest sold by the dissociating member. If one or more members purchase the dissociating member's interest, the collateral securing payment of each purchaser's promissory note will be the portion of the dissociating member's interest in the company purchased by the purchaser. If the company purchases the dissociating member's interest, each of the other members must sign a separate security agreement securing the company's payment of the purchase price under which the collateral is a percentage of the signing member's interest in the company after the purchase equal to the percentage interest of the dissociating member that is purchased by the company. For example, if there are three members, two have ownership interests of 25% and one has an ownership interest of 50%, and the company purchases the interest of the 50% member as a result of dissociation of the member, each of the 25% members (who will have a 50% ownership interest after the company's purchase) must provide collateral in the form of a 25% interest in the company. All security agreements must provide that if there is a default and the security interest is foreclosed or the interest in the company representing the collateral is retained by the secured party in satisfaction of the secured indebtedness, the member's interest will be transferable without the need for consent of the members or tender of the interest for sale to the company or other members. And the security agreement must permit a person to whom the membership interest is transferred to be admitted as a member of the company without consent of the members so long as the person furnishes the company with a signed written document agreeing to be subject to this agreement, as amended prior to the transfer.

9.5.3     The purchase must be closed within 30 days following the determination of the purchase price. At the closing, the dissociating member must sign and deliver to the purchaser a written assignment transferring the dissociating member's entire interest in the company free and clear of all encumbrances. The assignment must contain warranties of title and good right to transfer. The purchaser must sign and deliver the promissory note or notes to the dissociating member, and one or more security agreements containing the terms specified in the preceding subsection as

well as signed financing statements sufficient to perfect the security interests created must be delivered to the purchaser. All security agreements must not only be signed by the debtor but also by all of the members evidencing their consent to the transfer of the ownership interest constituting the collateral in the event of a default and their consent to the admission of the secured party or a purchaser of the collateral as a member of the company following a default.

**9.6**   **Effect of Purchase**. A dissociating member will cease to be a member on the dissociation date. After that, the dissociating member will have no rights as a member in the company, except the right to have the member's ownership interest purchased in accordance with the terms of this agreement. If the company and other members fail to purchase a dissociating member's interest and the company is dissolved as a result, the member will be considered to have continued to be a member retroactive to the dissociation date and will have all rights of a member in connection with the winding up of the business of the company.

**9.7**   **Successor in Interest**. For purposes of this agreement, the term "dissociating member" includes a dissociating member's successor in interest.

**9.8**   **Life Insurance**. The company may insure the life of any member for purposes of funding the purchase of the interests of deceased members under this agreement, and the members consent to the company's purchase of such insurance.

**9.8.1**   The company may name itself as beneficiary of any life insurance policies purchased, but death benefits will be held by the company in trust for the purposes of this agreement. The company will be the sole owner of the policies and may use any dividends declared and paid on a policy for the payment of premiums on that policy.

**9.8.2**   If the company owns insurance on the life of a member at the time of his or her death and the price for the purchase of the member's interest is determined by appraisal, the insurance must be valued for purposes of the appraisal at its cash surrender value on the day preceding the member's death. Whether the purchase price is determined by agreement or appraisal and whether the purchase is made by the company or the other members, the purchase price for a deceased member's interest in the company may in no event be less than the amount of the death benefits received by the company, and a down payment must be made when the purchase of the decedent's interest is closed equal to the amount of such death benefits (which will reduce the amount of the promissory note or notes in payment of the decedent's interest).

**9.8.3**   The company may retain ownership of insurance on the life of a member after the member ceases to be a member of the company. But if a member dissociates from the company for a reason other than death, the member has the right to

purchase any insurance on his or her life owned by the company. This option may be exercised at any time after the member's dissociation by giving notice of exercise to the company. The price for any insurance policy purchased will be its cash surrender value on the date of its purchase, less the balance of any loans outstanding against the policy on that date. The sale of the policy must be closed promptly after notice of exercise of the option is given, and the purchase price must be paid in cash or collected funds. The company is not obligated to retain ownership of any policy on the life of a member for more than 60 days after his or her dissociation.

9.9    **Indebtedness, Guaranties and Security Interests.** If the entire ownership interest of a dissociating member is purchased, all obligations of the company and other members owed to the member must be paid in full at the time of the closing, and all obligations of the dissociating member owed to the company or other members must also be paid in full. In addition, the company and other members must make reasonable efforts to obtain the release of the dissociating member from any guaranty of indebtedness or obligations of the company and to obtain the release of any trust deed, mortgage, pledge, security interest, or other security device in any form on any property or interest in property of the dissociating member that secures the indebtedness or obligations. If these releases cannot be obtained, the company and the other members must, at the time of the closing, agree to indemnify and hold the seller harmless from any loss, liability, or expense, including reasonable attorneys' fees, arising out of or related to such indebtedness or obligations.

## 10.    Transfer of Members' Interests

10.1    **Effectiveness of Transfers.** No member may transfer any portion of the member's interest in the company except as permitted in the section of this agreement relating to transfer of members' interests. Any purported transfer of an ownership interest in violation of this agreement will be void and of no effect. A "transfer" includes a sale, exchange, pledge, or other disposition, whether voluntary, involuntary, or by operation of law, and specifically includes the transfer of a member's interest incident to a dissolution of the member's marriage or a legal separation from his or her spouse.

10.2    **Securities Law Restriction.** Each member acknowledges that the members' interests in the company have not been registered under the Securities Act of 1933 or applicable state securities laws in reliance on exemptions from registration and that the resale or other transfer of the members' interests is restricted by applicable provisions of the Securities Act of 1933 and applicable state securities laws. Each member agrees that the member's interest may not be offered for sale, sold, transferred, pledged, or otherwise disposed of unless the members' interests in the company are registered under the Securities Act of 1933 and applicable state securities laws or unless an exemption from registration is otherwise available. *Notwithstanding any other provision of this agreement, the interest of a member in the company may not be offered for sale, sold, transferred, pledged, or otherwise disposed of in the absence of an effective registration statement under the Securities Act of 1933 and applicable state securities laws or an opinion of counsel*

*satisfactory to the managers that registration under the Securities Act of 1933 and applicable state securities laws is not required.*

**10.3    Permitted Transfers.** Subject to the securities law restriction, a member may transfer all or part of the member's interest in the company with the prior written consent of all other members. If the other members do not consent, the member may make the transfer if: (a) the interest has been tendered for sale to the company; (b) the tender has not been accepted by the company or the other members within the time limits set forth in this agreement; (c) the transfer is made to the transferee named in the notice of tender within 180 days after the notice of tender is given; and (d) the transfer is at a price and on terms no more favorable to the transferee than those set forth in the notice of tender.

**10.4    Tender of Interest.** If a member wants to transfer all or part of the member's interest in the company, the transfer does not violate the securities law restriction, and the other members do not consent, the interest must be tendered for sale by giving notice of a tender to the company. The notice must contain the name and address of the proposed transferee, the price to be paid for the interest, if any, and the terms of the proposed transfer. If a member's interest is transferred involuntarily or by operation of law, the successor in interest to the transferring member may give notice of a tender to the company at any time following the transfer. Another member may also give notice of a tender on behalf of the successor in interest. In this case, the notice must be given to the successor in interest as well as the company, and the successor in interest will be deemed to have given the notice of a tender at the time it is given by the other member. For purposes of this agreement, the term "tendering member" includes a successor in interest to a member whose interest in the company has been transferred.

**10.5    Acceptance of Tender.** Within 60 days after a notice of tender is given, the company may accept the tender by giving notice to the tendering member. The company will then have the right to purchase the tendered ownership interest for the lesser of the price set forth in the notice of tender (if the proposed transfer is to be by sale) or the price determined under this agreement as if the tendering member dissociated from the company and the dissociation date was the date of the tender. The purchase price will be paid on the terms that would apply under this agreement if the tendering member had dissociated on the date of the tender, unless the proposed transfer involves a sale, in which case the company may choose to pay the purchase price on the terms set forth in the notice of tender or in this agreement.

**10.6    Purchase by Members.** If the company fails to exercise its right to accept a tender, any member may accept the tender and purchase the tendered interest at the same price and on the same terms that would apply to a purchase by the company. Notice of acceptance of tender by a member must be given to all other members as well as to the tendering member. The tender must be accepted by members within 15 days following the expiration of the 60-day period for the company to accept the tender. If more than one member accepts the tender, the accepting members have the right to purchase the tendered interest pro rata in accordance with their ownership interests.

**10.7**    **Purchase of Entire Interest Required.** No acceptance of a tender will be effective unless the tender is accepted by the company or by one or more of the other members as to the entire ownership interest tendered. A tendering member is not required to sell only a part of a tendered interest.

**10.8**    **Effect of Tender**. The member tendering an interest in the company will cease to be a member with respect to the interest when the tender is accepted by the company or the other members. Thereafter, the tendering member will have no rights as a member in the company, except the right to have the tendered interest purchased in accordance with this agreement.

**10.9**    **Substitution**. If all or part of a member's ownership interest is transferred, the transferee may be admitted as a member of the company so long as the person furnishes the company with a signed written document agreeing to be subject to this agreement, as amended prior to the transfer, and all of the members agree to the admission. Members may withhold their consent reasonably or unreasonably. If the transferee is the only member of the company following the transfer, the transferee will be admitted as a member without the need for an agreement to be bound by this operating agreement or the consent of members. If a transferee is not admitted as a member, the transferee will be allocated the portion of the company's profit or loss allocated to the ownership interest that has been transferred and will have the right to receive distributions from the company with respect to the interest. But the transferee will not have the other rights of a member, including the right to vote for the election of managers, participate in the management of the company, act on behalf of the company, or inspect records of the company.

**11.    Authorization of Purchase**

If members holding a majority of the ownership interests exclusive of the interest held by a dissociating or transferring member vote to authorize the company to purchase the interest of the dissociating member or to authorize the company to accept a tender and exercise its option to purchase the interest of the transferring member, the dissociating or transferring member's interest must be voted in favor of the such authorization. This obligation is specifically enforceable in equity, and all of the members acknowledge that the other members may lack an adequate remedy at law if the obligation is breached by a dissociating or transferring member.

**12.    Dissolution and Winding Up**

**12.1**    **Causes of Dissolution**. The company will dissolve on the earliest of the following events: (a) the expiration of the period of time for the company and other members to elect to purchase the interest of a dissociating member if neither the company nor the other members has exercised this election; (b) approval of a dissolution of the company by unanimous consent of the members; or (c) at such time as the company has no members.

**12.2**    **Liquidation after Dissolution**. Following dissolution of the company, the managers must wind up its affairs. A full account must be taken of the assets and liabilities of the company, and the property of the company must be liquidated unless it is to be distributed to creditors or members in kind. The net assets of the company must then be applied and distributed in the following order of priority:

    **12.2.1**    To the creditors of the company in satisfaction of liabilities and obligations of the company, including, to the extent permitted by law, liabilities and obligations owed to members as creditors (except liabilities for unpaid distributions);

    **12.2.2**    To any reserves set up for contingent or unliquidated liabilities or obligations of the company deemed reasonably necessary by the managers, which reserves may be delivered to an escrow agent to be held for disbursement in satisfaction of the liabilities and obligations of the company, with any excess being distributed to the members as provided in the following subsection; and

    **12.2.3**    To the members in proportion to the positive balances of their capital accounts, after taking into account all adjustments made to capital accounts for the fiscal year during which the distributions to members are made.

**12.3**    **Distribution of Property in Kind.** Property of the company may be distributed to members in kind in the process of winding up with the unanimous approval of the members. As provided in Treas. Reg. §1.704-1(b)(2)(iv)(e)(1), any property distributed in kind must be valued and treated for the company's accounting purposes as though it had been sold at fair market value on the date of distribution, The difference between the fair market value of the property and its adjusted tax basis will be treated as a gain or loss on the sale of the property and will be credited or charged to the members' capital accounts in the manner specified in the section of this agreement relating to capital accounts. The gain or loss will not be treated as gain or loss recognized by the company for income tax purposes.

**12.4**    **Negative Capital Accounts**. If there is a negative balance in any member's capital account after the business of the company is wound up, the member will have no obligation to make any contribution to the capital of the company to make up the deficit, and the deficit will not be considered a debt owed to the company or any other person for any purpose.

**13.**    **Representations and Warranties of Members**

Each member represents and warrants to the company and the other members that he or she has acquired an interest in the company for such his or her own account for investment and not with a view to distribution of the interest.

**14.**    **Miscellaneous Provisions**

**14.1   Amendment**. All or part of this agreement may be amended or repealed by action of the members. The agreement may not be amended or repealed by oral agreement of the members or by oral or written agreement of the managers.

**14.2   Binding Effect**. The provisions of this agreement are binding on and will inure to the benefit of the heirs, personal representatives, successors, and assigns of the members. This section is, however, not a modification of any restriction on transfer set forth in this agreement.

**14.3   Notice**. Any notice or other communication required or permitted to be given under this agreement must be in writing and personally delivered or mailed by certified mail, return receipt requested, with postage prepaid. Notices mailed to a member must be addressed to the member's address listed in the section of this agreement relating to initial members, or if there is none, the current address of the member shown on the records of the company. Notices mailed to the company must be addressed to its principal office. The address of a party to which notices must be mailed may be changed by the party's giving written notice to the other parties. All mailed notices will be deemed to be given at the expiration of three days after the date of mailing unless the recipient acknowledges receipt prior to that time.

**14.4   Litigation Expense**. If any legal proceeding is commenced for the purpose of interpreting or enforcing any provision of this agreement, including any proceeding in the United States Bankruptcy Court, the prevailing party is entitled to recover reasonable attorneys' fees in the proceeding, or any appeal, to be set by the court without the necessity of hearing testimony or receiving evidence, in addition to the costs and disbursements allowed by law.

**14.5   Additional Documents**. Each member must execute all additional documents and take all actions as are reasonably requested by the managers in order to complete or confirm the transactions contemplated by this agreement.

**14.6   Counterparts**. This agreement may be executed in two or more counterparts, which together will constitute one agreement.

**14.7   Governing Law**. This agreement is governed by the law of the state in which the articles of organization of the company were filed and must be construed in accordance with the law of that state.

**14.8   Third Party Beneficiaries**. The provisions of this agreement are intended solely for the benefit of the members and managers and create no rights or obligations enforceable by any third party, including any creditor of the company, except as otherwise provided by applicable law.

**14.9   Authority**. Each individual executing this agreement on behalf of a corporation or other entity warrants that he or she is authorized to do so and that this agreement will constitute

the legally binding obligation of the corporation or other entity that the individual represents.

**14.10** **Counsel**. This agreement has been drafted by *Harry Friedland* (the "attorney"), who represents *[Dorothy Black and Lesmore Willis* in connection with the creation of the company understand that the attorney can represent only one party in connection with this matter and that the attorney represents *[name of represented member]* and does not represent them. *[name of unrepresented member]* and *[name of unrepresented member]* acknowledge that they have been advised by the attorney that they should retain attorneys of their own choice in connection with this matter.

Attest By:     Company Name: 2303 AVE LLC.

*Dorothy Black*
*Chief Managing Member*

Lesmore Willis
Managing Member

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**www.nyeb.uscourts.gov**

**STATEMENT PURSUANT TO LOCAL**
**BANKRUPTCY RULE 1073-2(b)**

DEBTOR(S): 2303 AVE LLC _____    CASE  NO.: __11_____

      Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor (or any other petitioner) hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[NOTE: Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

G  **NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.**

G  **THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:**

1.  **CASE NO.:** _____    **JUDGE:** _____    **DISTRICT/DIVISION:** _____

**CASE STILL PENDING: (YES/NO):** _____  *[If closed]* Date of closing: _____

**CURRENT STATUS OF RELATED CASE:** _____
                            **(Discharged/awaiting discharge, confirmed, dismissed, etc.)**

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*: _____

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES:** _____

_____

2.  **CASE NO.:** _____    **JUDGE:** _____    **DISTRICT/DIVISION:** _____

**CASE STILL PENDING: (YES/NO):** _____  *[If closed]* Date of closing: _____

**CURRENT STATUS OF RELATED CASE:** _____
                            **(Discharged/awaiting discharge, confirmed, dismissed, etc.)**

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*: _____

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASES:** _____

_____

Type text here

**[OVER]**

**DISCLOSURE OF RELATED CASES (cont'd)**

3.  **CASE NO.:** _____  **JUDGE:** _____  **DISTRICT/DIVISION:** _____

**CASE STILL PENDING: (YES/NO):** _____  *[If closed]* Date of closing: _____

**CURRENT STATUS OF RELATED CASE:** _____
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

**MANNER IN WHICH CASES ARE RELATED** *(Refer to NOTE above)*:_____

**REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ('REAL PROPERTY') WHICH WAS ALSO LISTED IN**

**SCHEDULE "A" OF RELATED CASES:** _____

_____

**NOTE: Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.**

**TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:**

**I am admitted to practice in the Eastern District of New York (Y/N):** Y _____

**CERTIFICATION (to be signed by pro-se debtor/petitioner or debtor/petitioner's attorney, as applicable):**

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except as indicated elsewhere on this form.

_____
Signature of Pro-se Debtor/Petitioner

739 Crown Street
**Mailing Address of Debtor/Petitioner**

Brooklyn      New York 11213
**City, State, Zip Code**

davesjewelers@aol.com
**Email Address**

1-347-489-0903
**Area Code and Telephone Number**

**Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the dismissal of the case with prejudice.**

<u>**NOTE:**</u> Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise result.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x

In re:                                          Case No.
                                                Chapter

                    Debtor(s)
-------------------------------------------------x

### AFFIRMATION OF FILER(S)

All individuals filing a bankruptcy petition on behalf of a pro se debtor(s), must provide the following information:

Name of Filer: _Lesmore Willis_

Address: _739 Crown St_

Email Address: _DavesJewelers@aal.com_

Phone Number: _(347) 489-0903_

Name of Debtor(s): _SSA LLC_

CHECK THE APPROPRIATE RESPONSES:

ASSISTANCE PROVIDED TO DEBTOR(S):

____ I PREPARED THE PETITION AND/OR ASSISTED WITH THE PAPERWORK BY DOING THE FOLLOWING: _____
_____

____ I DID NOT PROVIDE THE PAPERWORK OR ASSIST WITH COMPLETING THE FORMS.

FEE RECEIVED:

____ I WAS NOT PAID.

____ I WAS PAID.

              Amount Paid: $ _____.

I/We hereby affirm the information above under the penalty of perjury.

Dated: _5/2/2024_                    _[signature]_
                                     Filer's Signature

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

Chapter 11

□ _____ X

Case No: _____

IN RE: 2303 AVE LLC

 Debtor

□ _____ X

### VERIFICATION OF CREDITOR MATRIX / LIST OF CREDITORS

The undersigned Debtor hereby verifies that the Creditor Matrix/List of Creditors herein
submitted herein is true and correct to the best of his or her knowledge.

Dated: May 2, 2024

                                2303 AVE LLC          (Debtor)

                                By:    Lesmore Willis
                                Title:  Vice President

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

Chapter 11

☐_____ X

Case No: _____

IN RE: 2303 AVE LLC

Debtor

☐_____ X

## LIST OF CREDITORS

1. SPECIAL SERVICE AMERICAN, LLC

   15 Cuttermill Road, Suite 276
   Great Neck, New York.11021

1.

# CREDITOR MATRIX

SPECIAL SEERVICE AMERICAN, LLC
15 Cutteermill Road, Suite 270
Great Neeck, New York. 11021